| | |
|---|---|
| MARK SKIBA, | |
| Petitioner, | |
| | No. 19 CV 2267 |
| v. | |
| | Judge Manish S. Shah |
| ILLINOIS CENTRAL RAILROAD COMPANY, et al., | |
| Respondents. | |

## MEMORANDUM OPINION AND ORDER

Illinois Central Railroad suspended Mark Skiba, a railroad worker, for insubordination and for failing a drug test. Skiba's union appealed. The suspensions were affirmed by PLB 6990, a private adjudicatory body under federal railroad law. Skiba's union did not seek judicial review, and told Skiba that there was no basis to overturn the decisions. Skiba disagreed and filed this action pro se. The record reveals no plausible grounds to vacate PLB 6990's awards, so defendant's motion to dismiss the complaint is granted.

## I. Legal Standard

A complaint must contain a short and plain statement that plausibly suggests the violation of a legal right. Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556–58 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 677–80 (2009). When evaluating a motion to dismiss, I assume all the factual allegations in the complaint are true and draw all reasonable inferences in the petitioner's favor. *Iqbal* at 678–79. I disregard legal conclusions and conclusory statements. *Id.* Documents attached to

the complaint and that are subject to judicial notice (such as the record of proceedings before the public law board) can be considered when deciding a motion to dismiss. *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013).[1]

## II.    Background

Mark Skiba initially worked as a manager for Illinois Central Railroad and was represented by the Transportation Communications Union. [20] at 101, 103.[2]

---

[1] Illinois Central Railroad, the only proper respondent to this claim for judicial review of a public law board decision, moved to dismiss Skiba's complaint under Rules 8 and 12(b)(6). The motion is not a motion for judgment on the pleadings or for summary judgment based on undisputed material facts, but the distinctions among these procedural devices do not matter here. Skiba's complaint for judicial review can be assessed based on the complete record and consistent with the standards applicable to Rule 12(b)(6).

[2] Federal courts have no authority to review a public law board's findings of fact. *Lyons v. Norfolk & Western Ry. Co.*, 163 F.3d 466, 468, n.1 (7th Cir. 1999). Bracketed numbers refer to entries on the district court docket. Referenced page numbers are from the CM/ECF header placed at the top of documents. Skiba objects to the filing of the PLB 6990 record, [45], as untimely, because the board had been on notice of Skiba's complaint since Spring 2019, [6], but only filed the record in February 2020. [45]. The Railway Labor Act mandates that the board "shall file in the court the record." 45 U.S.C. § 153 First "(q). There is no statutory filing deadline. *See id.* In order to review the awards, the record is necessary to determine whether PLB 6990 complied with the RLA, remained within its jurisdiction, or was corrupted by a panel member. Skiba also objects to the record's authenticity, because its chain of custody has not been established to his satisfaction, the record may not have been obtained from the archives maintained by the National Mediation Board or the National Railroad Adjustment Board, and Skiba believes his evidence creates a conflict over how and whether the public law board hearing was conducted. [46]. The requirements for requesting a record from the NMB or NRAB archives are not the sole limit on a court's assessment of authenticity. Where counsel for the neutral panel member has certified and filed the record of PLB 6990's proceedings, that is sufficient authenticity. *See* Fed. R. Evid. 201(b)(2) (Judicial notice may be taken of facts that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."); *see also Opoka v. I.N.S.*, 94 F.3d 392, 394 (7th Cir. 1996) ("Determinations to be judicially noticed include 'proceeding[s] in other courts, both within and outside of the federal judicial system, if the proceedings have a direct relation to matters at issue.'") (internal citations omitted). Furthermore, while Skiba goes to great lengths to question the chain of custody, he attached all but three of the documents in the PLB record to his complaint. [20]. His dispute about how the board conducted the hearing does not undermine the record of its proceedings. His objections, [43][46], are overruled. Skiba's request for a stay and leave to amend his petition, [46], is also denied. Amendment would be futile because, as addressed in this opinion, the record establishes no basis for judicial review. His argument that he can refute the evidence in the record is not a reason to allow

2

Management employees were not required to undergo federal drug testing. [45-1] at 35. Nevertheless, in 2008 and 2011, Skiba took a pre-employment drug test and fitness test in accordance with company policy. [20] at 101; [45-1] at 49. In January 2013, Skiba's position was terminated. [20] at 101. By March 2013, he agreed to serve in a non-managerial position as a relief clerk, *id.*, which meant covering vacancies, including "hours of services" positions like tower operators. [45-1] at 49; [45-2] at 11.[3] Skiba's hours were from 3:00 pm to 11:00 pm. [45-1] at 5. Unlike managers, hours-of-service employees were subject to federal drug testing, [45-1] at 35, 49, because their jobs affected the safety of railroad operations. [20] at 102.[4] On October 31, 2013, Skiba was told to submit to a federal drug screening because as a relief clerk, he could be called to cover hours-of-service vacancies. [45-1] at 35, 48. Skiba did not believe he was subject to the test, based on his length of service and clerical status, and refused to take it. *Id.* at 6, 48.

The next day, Skiba was told he had to take the test. *Id.* At the hearing held to investigate whether Skiba's response to the drug test violated company policies, witnesses testified that Skiba became enraged, irate, and argumentative, and refused

---

amendment because of the court's inability to review the board's findings of fact. *See Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago and Northwest Indiana*, 786 F.3d 510, 520 (7th Cir. 2015) ("Where it is clear that the defect cannot be corrected so that amendment is futile, it might do no harm to deny leave to amend and to enter an immediate final judgment.").

[3] "[A] tower operator for the Illinois Central Railroad switch[es] tracks and ensur[es] trains move[] from one location to another as smoothly as possible." Ben Meyerson, *Train in vein: Lifelong passion also a career*, Chi. Trib.. (Jul. 15, 2009), https://www.chicagotribune.com/news/chi-train-tower-city-zone-15-jul15-story.html (last visited Mar. 16, 2020).

[4] *See also* 49 U.S.C. § 20101.

to lower his voice or take the test. *Id.* at 6, 9, 16. Skiba testified that he was not argumentative but had a lot of questions that went unanswered. *Id.* at 26. Skiba's manager eventually left the room to locate a male manager to help remove Skiba. *Id.* at 6. While she was gone, Skiba agreed to take the test and provided a urine sample. *Id.* at 7. When his manager returned, she dismissed Skiba for insubordination. *Id.* The test results came back positive for marijuana. [45-2] at 11–12, 16. Shortly thereafter, the railroad notified Skiba of a formal investigation into whether he violated any company rules, regulations, or policies for insubordination and testing positive for a prohibited substance. [45-1] at 30–31; [45-2] at 13–15. Although Illinois Central and TCU's collective bargaining agreement allowed employees to waive a formal investigation upon admitting guilt for a first-time drug offense, Anissa Black, the railroad's manager of labor relations, denied Skiba's waiver. [20] at 13. After being notified of the investigation, Skiba voluntarily signed up for the company's employee assistance program. [45-2] at 9.

Two recorded hearings took place on company property in late November. [45-1] at 3; [45-2] at 3. A hearing officer, Skiba, three witnesses, and Skiba's union representative, Sara Wolfe, were present. [45-1] at 3; [45-2] at 3. The hearing officer, Skiba, and Wolfe questioned the witnesses, which included Skiba. [45-1] at 3; [45-2] at 3. The exhibits included:

- The railroad's "Bulletin Notice No. 1" policy which prohibited 1) use or possession of controlled substances that might impair employees on duty and 2) acts of insubordination, [45-1] at 36–37;

- The railroad's drug and alcohol policy for clerks, which required pre-employment drug testing. *Id.* at 38. The policy also noted that employees that tested positive—whether pre-employment, randomly, for cause or reasonable suspicion, post-accident, upon returning to work, or for follow-up testing—would be subject to discipline, including dismissal, *id.*;

- The railroad's "Substance and Alcohol Free Environment (S.A.F.E.) Policy and Guidelines," which mandated an alcohol and drug-free workplace and prohibited on-duty employees from using controlled or mood altering substances, [45-2] at 20.

The exhibits also included excerpts of federal drug testing laws. [45-2] at 23–25. In December, after reviewing the November hearing transcript, transportation manager Doug Townsend sent a letter to Skiba, issuing him a 10-day suspension for insubordination in violation of Bulletin Notice No. 1, and a 180-day suspension for testing positive for marijuana in violation of the company's drug and alcohol policies and Bulletin Notice No.1. [45-1] at 41; [45-2] at 40.

In early 2014, Skiba's union appealed the decision and argued that the railroad violated its obligation to hold a fair and impartial hearing, [45-1] at 44; [45-2] at 43, which is required by Rule 22 in the CBA. [20] at 137. In the spring, Black declined the appeal based on the November 2013 hearings. [45-1] at 50; [45-2] at 45. Black also noted that a new letter from Skiba to one of the witnesses, in which he apologized and admitted unprofessionalism, undermined his testimony and TCU's defenses. [45-1] at 50. As required by the CBA (and the Railway Labor Act, 45 U.S.C. § 152 Second),

the union and railroad met a few months later to attempt to resolve Skiba's claim but were not successful. *Id.* at 54; [45-2] at 51.

In early 2016, Skiba wrote a letter to the railroad and TCU, stating that he had failed to receive any updates from either of them and believed that the railroad had missed the deadline to respond to the union's initial appeal. [45-1] at 56–57; [45-2] at 53–54. Skiba claimed a right to self-representation and argued that his suspensions should be overturned. [45-1] at 56–57; [45-2] at 53–54. Black responded, indicating the railroad had declined Skiba's appeal within the permissible timeframe, and reiterated the company's reasons for declining his appeal. [45-1] at 59–60; [45-2] at 56–57; [20] at 139 (CBA Rule 25: Time Limits–Grievances). Skiba then filed a grievance against Black for her letter and requested a conference, alleging unfair treatment. [45-1] at 62–63; [45-2] at 59–60. Black responded, explaining why Skiba was not entitled to a conference under the CBA. [45-1] at 65; [45-2] at 62. A few days later, Skiba sent a letter to three railroad officials, complaining that the company used facts outside of the record to justify his suspensions. [45-1] at 67; [45-2] at 64. He also wrote that due to lack of communication from TCU, he had no choice but to represent himself in his appeal and requested review by the railroad's highest-ranking officer. *Id.* Skiba copied his union representative on the letter. *Id.*

At the end of 2016, Public Law Board 6990—a special adjustment board that reviews grievances between the union and railroad—ruled on both claims. [20] at 81–85. The board consisted of Black, representing the railroad, Allison Dillon (née Parker), representing TCU, and Charlotte Gold, a neutral panel member. *Id.* at 83,

6

85. The record before the board consisted of the November 2013 hearing transcript; the suspension letters Townsend issued to Skiba; the union's appeal letter; Black's declination letter, which included a copy of Skiba's new apology letter; the letter confirming the parties' conference; Skiba's letter to the railroad; Black's response; Skiba's conference request; Black's response; and Skiba's letter to the three railroad officials. [45-1] at 1; [45-2] at 1.

For Skiba's insubordination claim, case number 72, the only claim PLB 6990 evaluated was whether Skiba's behavior violated any company rules or policies, and whether a 10-day suspension and loss of benefits were warranted. [20] at 81. The board found that the railroad concluded Skiba was liable for insubordination in violation of Bulletin Notice No. 1, based on the November 2013 hearings. *Id.* The board described the parties' different positions on the federal drug-testing requirement and Skiba's demeanor. *Id.* at 82. The board also referenced Skiba's apology letter that post-dated the 2013 hearings. *Id.* The board concluded that it could "find no basis in the record for setting aside this discipline." *Id.* at 83. The award was signed by Dillon, Black, and Gold. *Id.* In case number 73, the only claim PLB 6990 evaluated was whether Skiba violated any company rules or policies in connection with his drug test, and whether his 180-day suspension and loss of benefits were warranted. *Id.* at 84. The board found that Skiba tested positive, *id.*, and noted that while Skiba voluntarily signed up for the employee assistance program, it was only just before his hearing took place. *Id.* at 85. The board concluded it had "reviewed this case in its entirety. There is no dispute about Claimant's culpability. Under the

circumstances, it must be concluded that he was treated leniently. There is no basis for setting aside Carrier's decision." *Id.* The award was signed by the same three panel members. *Id.* Skiba learned of PLB 6990's decisions four months later, in April 2017. [20] at 16, 97, 158, 172.

That summer, the Federal Railroad Administration penalized Illinois Central for administering an untimely drug test to Skiba in November 2013, because the test should have been administered before Skiba started working as a relief clerk. *Id.* at 21. Dillon, the TCU representative on PLB 6990, also responded to correspondence from Skiba, and explained the partisan composition and appellate function of PLBs, the limited scope of review to "evidence brought forth during the on-property handling of the case," and the lack of transcription or recording requirements for PLB proceedings. *Id.* at 171. Dillon also explained the distinction between the National Railroad Adjustment Board and public law boards. *Id.* She reassured Skiba that PLB 6990 "was not held in secret" and that she and the TCU national representative were present. *Id.* at 172. She also explained PLB 6990's notice requirements, the rights of individual employees, and the appeal process—specifically, the lack thereof. *Id.* Finally, she indicated there was no basis to overturn the awards in federal court. *Id.*

Skiba filed this federal lawsuit against PLB 6990 and the three panel members, Black, Dillon, and Gold. [1]. The original complaint was not clear about who Skiba was trying to sue and for what kinds of claims. I ordered Skiba to file an amended complaint, naming all defendants and containing a concise statement of his claims. [19]. Skiba changed the respondent to Illinois Central Railroad Company and

railroad officials Anissa Black, Cathy Cortez, Katie Roop, Douglas Townsend, Steve Miller, Cheryl Clark, Joan Ricevuto, and John Leorop. [20] at 1–2. Skiba's amended complaint, which includes exhibits, is 172 pages long. *Id.* His "statement of the claim" states that he seeks judicial review of PLB 6990's awards under the Railway Labor Act. *Id.* at 3. He asks the court to vacate the PLB's decisions in cases 72 and 73 and award him damages. *Id.* at 3, 78. Skiba's complaint cites federal laws, federal regulations, and internal rules and procedures adopted by the NRAB. *See e.g.* [20] at 5–9. Although pro se, Skiba is familiar with litigation and has filed other employment discrimination, state law, and tort claims against Illinois Central. *See Skiba v. Canadian National Railway Company et al.*, No. 15-cv-05353 (N.D. Ill.); *Skiba v. Illinois Central Railroad, Co.*, No. 18-cv-03381 (N.D. Ill.); *Skiba v. Illinois Central Railroad*, No. 18-cv-06036 (N.D. Ill.).

## III. Analysis

### A. The Proper Respondents to Skiba's Claim

Illinois Central initially argued that it had not been properly served, but it withdrew this argument because Skiba served the railroad with a summons and a complaint in compliance with Federal Rule of Civil Procedure 4(c). [40] at 2.

Nevertheless, Illinois Central argues that Skiba's claims against the railroad's management officials, [20] at 1–2, should be dismissed for improper service. [40] at 2. There is no record of these individuals being served with Skiba's complaint, but even if these individuals had been served, they would still be dismissed as improper respondents in a claim to vacate a PLB award. The Railway Labor Act makes no

reference to the proper identity of respondents. 45 U.S.C. § 153 First (q). However, public law board members, including Black, Dillon, and Gold, are not proper parties to a federal lawsuit. *Mitchell v. Union Pacific R. Co.*, 408 F.3d 318, 320 (7th Cir. 2005) (holding that the litigation should be between the parties to the arbitration and not the adjudicator). Only Illinois Central was a party to the original PLB proceeding.[5] [20] at 81, 84. This comports with the RLA, which only contemplates a dispute-resolution mechanism for the union and the railroad and does not provide aggrieved employees with a cause of action against individuals. *See Chicago, R. I. & P. R. Co. v. National Mediation Bd.*, 435 F.2d 339, 342 (7th Cir. 1970). Nor does Skiba allege separate legal theories against the individual defendants. Illinois Central's management officials are dismissed. The Clerk is directed to amend the caption to reflect the proper respondent: Illinois Central Railroad Company.

### B.    A Short and Plain Complaint

District courts must construe pro se complaints liberally and provide ample opportunity for pro se litigants to amend their complaints. *Kiebala v. Boris*, 928 F.3d 680, 684 (7th Cir. 2019) (citing *Donald v. Cook County Sheriff's Dep't*, 95 F.3d 548, 555 (7th Cir. 1996)). Complaints should not be dismissed just because they are repetitive or contain irrelevant information. *U.S. ex rel. Garst v. Lockheed-Martin Corp.*, 328 F.3d 374, 378 (7th Cir. 2003). At the same time, pro se complaints may be

---

[5] Canadian National was also a party. Canadian National acquired Illinois Central in 1998. Stephen Franklin, *Illinois Central Goes to Canadian National Railway*, Chi. Trib. (Feb. 11, 1998), https://www.chicagotribune.com/news/ct-xpm-1998-02-11-9802110374-story.html (last visited Mar. 16, 2020).

dismissed under Federal Rule of Civil Procedure 8(a) if they fail to trace a cause of action. *See e.g. Griffin v. Milwaukee County*, 369 Fed.Appx. 741, 743 (7th Cir. 2010); *Rybak v. Luxury Motors, Inc.*, 79 Fed.Appx. 936, 937 (7th Cir. 2003). The length, complexity, and disjointedness of a complaint may make it unintelligible. *U.S. ex rel. Garst*, 328 F.3d at 378; *see also Kamdem-Ouaffo v. Tapfin North America Shared Services*, 788 Fed.Appx. 401, 402 (7th Cir. 2019); *Srivastava v. Daniels*, 409 Fed.Appx. 953, 955 (7th Cir. 2011). Ultimately, the issue is one of notice and whether the pro se litigant has described a claim with potential merit. *McCready v. eBay, Inc.*, 453 F.3d 882, 890 (7th Cir. 2006).

Skiba's 172-page amended complaint did him no favors. I ordered Skiba to file a "concise statement of his claims," [19], but he says he does not recall this instruction. [34] at 27. Nevertheless, he volunteers to dismiss his amended petition and file a new one, *id.*, unlike other pro se litigants who "unreasonably refused" to amend their complaints, which were then dismissed for procedural defects. *See e.g. Kamdem-Ouaffo,* 788 Fed.Appx. at 402. Furthermore, Skiba points to his short "Statement of Claim" on page three of his amended complaint, [20] at 3, which puts Illinois Central on notice of his cause of action under the RLA. And Illinois Central was able to discern and respond to Skiba's legal arguments in its motion to dismiss. [28]. Skiba's complaint does not suffer from a Rule 8 procedural defect that merits dismissal of his case.

While Skiba's response to the motion to dismiss far exceeds the 15-page limitation, N.D.Ill. Local R. 7.1, in part because he copies each paragraph from Illinois

Central's motion and responds to each one,[6] I overlook this transgression. *See Dr. Robert L. Meinders, D.C., Ltd. v. UnitedHealthcare, Inc.*, 800 F.3d 853, 858 (7th Cir. 2015) (district courts wield considerable discretion in interpreting and applying their local rules); *Gray v. Hardy*, 826 F.3d 1000, 1004–05 (7th Cir. 2016) (the district court, faced with a pro se litigant's failure to comply with local rules, was entitled to take a flexible approach and overlook the noncompliance).

## C. Review of PLB 6990's Awards

The Railway Labor Act restricts judicial review of public law board awards. 45 U.S.C. § 153 Second. The findings and orders of a PLB cannot be overturned unless: 1) the board failed to comply with the RLA; 2) the board exceeded its jurisdiction; or 3) a member of the panel was fraudulent or corrupt. 45 U.S.C. § 153 First (q). This is "one of the most deferential standards of judicial review in all of federal law." *Betts v. United Airlines, Inc.*, 768 Fed.Appx. 577, 578 (7th Cir. 2019) (quoting *Bhd. of Locomotive Eng'rs & Trainmen, Gen. Comm. of Adjustment, Cent. Conference v. Union Pac. R.R. Co.*, 719 F.3d 801, 803 (7th Cir. 2013)). Due process is also grounds for review. *International Broth. of Elec. Workers v. CSX Transp., Inc.*, 446 F.3d 714, 717 (7th Cir. 2006); *see also Union Pacific R. Co. v. Brotherhood of Locomotive Engineers and Trainmen General Committee of Adjustment, Cent. Region,* 558 U.S. 67, 69 (2009) (acknowledging but not resolving the circuit split on whether the RLA

---

[6] A brief in support of or in response to a motion does not require numbered paragraphs. Skiba may have been confused by Fed. R. Civ. P. 10(b), which governs the form of pleadings (a complaint is a pleading, but a motion is not). Skiba might also have been thinking about the requirements of Local Rule 56.1, which require a call-and-response format for statements of fact submitted on summary judgment. N.D. Ill. Local R. 56.1. But those rules do not apply to legal arguments made in briefs or memoranda.

precludes judicial review of due process violations). At most, a federal court can affirm, set aside, or remand a board's order. 45 U.S.C. § 153 First (q). Skiba acknowledges this narrow review. [34] at 3–4. His request for damages is outside the scope of permissible relief and denied.

### 1.   Compliance with the RLA

Judicial review of public law board awards is limited because the RLA provides a comprehensive scheme for aggrieved employees and the railroad to resolve their disputes through representatives: the union and the company. *Brotherhood of Locomotive Engineers and Trainmen General Committee of Adjustment, Cent. Region v. Union Pacific R. Co.*, 522 F.3d 746, 748 (7th Cir. 2008). The parties must first attempt to resolve their problems through an internal process set forth in the CBA. *Id.* That process includes "investigations, hearings, and appeals that take place on the railroad property and are generally referred to as 'on-property' proceedings." *Id.* If the on-property proceedings fail, the dispute is submitted to a conference between the representatives. *Id.*; 45 U.S.C. § 152 Second. The record includes proof that TCU and Illinois Central held a claims conference in 2015, and Black explained why Skiba was not entitled to second conference under the CBA.[7] [45-1] at 54, 65; [45-2] at 51, 62.

Only after the parties have followed the CBA's grievance procedures may they resort to an adjustment board. *Union Pacific R. Co.*, 558 U.S. at 83 (2009); 45 U.S.C.

---

[7] To the extent Skiba was unaware of the initial conference in September 2015, this court has no jurisdiction over the timeliness of TCU's communications during the on-property proceedings, as discussed below. Furthermore, the failure to conference does not deprive a PLB of its adjudicatory authority. *Union Pacific R. Co. v. Brotherhood of Locomotive*

§ 153 First (i). The RLA once provided for a single entity, the National Railroad Adjustment Board, to review claims. 45 U.S.C. § 153 First; *International Broth. of Elec. Workers*, 446 F.3d at 719. But Congress amended the RLA to include special boards of adjustment, also known as public law boards, as an alternative to alleviate the huge backlog of cases before the NRAB. *Id.* (citation omitted). PLBs operate differently from the NRAB. They are voluntarily established by private contract between the railroad and union. 45 U.S.C. § 153 Second; *Merchants Despatch Transp. Corp. v. Systems Federation Number One Ry. Emp. Dept. AFL-CIO Carmen*, 551 F.2d 144, 151 (7th Cir. 1977). A PLB consists of two partisan members, a representative of the union and the carrier, and if they fail to reach a decision, a neutral panel member hired by the National Mediation Board. 45 U.S.C. § 153 Second; *United Transp. Union v. Gateway Western Ry. Co.*, 284 F.3d 710, 711 (7th Cir. 2002).

Here, the record establishes that Skiba was represented at the proceedings by his union, [20] at 83, in compliance with the RLA. In fact, under the statute, individual employees like Skiba do not have a right to proceed, attend, or testify before a public law board. *O'Neill v. Public Law Bd. No. 550*, 581 F.2d 692, 696, n.7 (7th Cir. 1978) (if an individual employee informs his union that he wants to proceed without representation, the PLB does not provide him with any recourse).[8] PLBs were designed to review claims prescreened by the union and railroad, to avoid a

---

*Engineers and Trainmen General Committee of Adjustment, Cent. Region,* 558 U.S. 67, 82 (2009).

[8] Skiba had his opportunity to speak, testify, and develop the record at the on-property investigation in November 2013.

proliferation of special adjustment boards. *Id.* (citing *Chicago, R. I. & P. R. Co. v. National Mediation Bd.*, 435 F.2d 339 (7th Cir. 1970)). Thus, Skiba was never entitled to actual notice of the hearing. *Id.* at 695. And the union was on notice, under 45 U.S.C. § 153 First (j), as demonstrated by Dillon's attendance. [20] at 83. Whether TCU National Representative Brian Shanahan received notice—a point that Skiba emphasizes—is irrelevant. And PLB 6990 did not mishandle Skiba's requests for self-representation, [45-1] at 56–57, 67; [45-2] at 53–54, 64, because Skiba had no right to appear in front of the board.

PLB 6990 had the complete "on-property" record, including the November 2013 transcripts. [45-1] at 1; [45-2] at 1. There was no evidentiary defect. Skiba's apology letter was introduced during the on-property appeal process, [45-1] at 50, and became part of the on-property record. *See Kulavic v. Chicago & Illinois Midland Ry. Co.*, 1 F.3d 507, 516–17, n.4 (7th Cir. 1993); *Brotherhood of Locomotive Engineers and Trainmen General Committee of Adjustment, Cent. Region*, 522 F.3d at 748. TCU and Skiba also received written copies of the awards. [20] at 81–85. 45 U.S.C. §§ 153 First (m), Second; *Kulavic*, 1 F.3d at 512. Section 153 First (m) does not entitle parties to the entire PLB record, just a copy of the award. As Dillon explained to Skiba, [20] at 171–72, he was never entitled to a recording of PLB 6990's proceedings. *Hill v. Norfolk and Western Ry. Co.*, 814 F.2d 1192, 1199 (7th Cir. 1987) (the recording and transcription requirements of 45 U.S.C. §§ 157, 158, which pertain to ad hoc methods of dispute resolution, are inapplicable to PLB proceedings).

When evaluating the timeliness of an award, the court must consider the terms of the PLB agreement, whether the employee complained about the board's delay before the decision, and the harm to the employee. *See id.* The record does not include the deadline by which PLB 6990 should have rendered its decisions. Skiba was notified of the awards four months after-the-fact. [20] at 16, 97, 158, 172. He also complained at least twice about the delay before the board convened. [45-1] at 56–57, 67; [45-2] at 53–54, 64. However, even assuming the board violated its contractual obligation to provide a timely decision, Skiba experienced no harm by the delay. The board affirmed the suspensions, and by the time the on-property process ended, the discipline had run its course so Skiba was not affected by the public law board's delay. As Dillon explained, [20] at 171–72, there is no right to request the board reconvene within ten days of its decision. *See* 45 U.S.C. § 153.[9] And Skiba maintained his right to seek judicial review—the railroad has not challenged the timeliness of Skiba's lawsuit.

Some NRAB procedural requirements under the RLA apply to public law boards[10] and there may be similarities between NRAB and PLB proceedings. But NRAB regulations, 29 C.F.R. § 301 et seq., and internal uniform rules of procedure (like "Circular 1" that Skiba cites) are not, by law, applicable to PLBs, which are

---

[9] If the two partisan panel members are unable to agree upon a neutral panel member, within ten days after their failure to agree upon an award, either one of them may request the National Mediation Board to appoint a neutral panel member. 45 U.S.C. § 153 Second.

[10] For example, as discussed above, the notice and award requirements of the NRAB, 45 U.S.C §§ 153 First (j), (m), apply to public law boards.

creatures of private contract. *See e.g. Merchants Despatch Transp. Corp.*, 551 F.2d at 151–52.[11]

PLB 6990 complied with the requirements of the RLA, so Skiba's complaint does not plausibly allege a challenge based on this avenue of judicial review.

## 2. *Scope of Jurisdiction*

A public law board is limited to evaluating the contractual agreement between the union and the railroad. *Lyons v. Norfolk & Western Ry. Co.*, 163 F.3d 466, 469 (7th Cir. 1999). Whether the decision is correct is irrelevant. *Hill*, 814 F.2d at 1197. "All that matters is that they were interpreting the contract" and not "imposing private notions of workplace justice." *Id.* In *Lyons*, the railroad randomly drug tested an employee in accordance with Federal Railroad Administration regulations and dismissed him after he was unable to provide a urine sample in sufficient time. 163 F.3d at 468. The FRA investigated the incident and concluded the railroad failed to provide Lyons with the requisite two hours to provide a sufficient urine sample. *Id.* Separately, the public law board determined that under the terms of the CBA, the employee's firing was not "unjust" because Lyons was unable to provide a sufficient sample after 4 hours, based on the PLB's findings of fact. *Id.* at 468–69. The court upheld the PLB award, stating that "the focus for a reviewing court is not whether a PLB's decision varied with federal standards, but rather whether it ignored 'clear and unambiguous' contract provisions." *Id.* at 470. Thus, a federal court cannot review a board's findings of fact, *id.* at 468, n.1 (citations omitted), or the sufficiency of the

---

[11] Public law boards are also subject to their own regulations. *See* 29 C.F.R. § 1207 et seq.

evidence presented to the board. *Anderson v. National R.R. Passenger Corp.*, 754 F.2d 202, 204 (7th Cir. 1984).

PLB 6990 only evaluated whether Skiba violated any company rules, regulations, and/or policies. [20] at 81, 84. Illinois Central states that the union relied on the general requirement that the railroad have just cause to impose discipline, which explains why PLB 6990 did not interpret specific provisions of the CBA. [28] at 10. The on-property record also establishes that the decision was rooted in the CBA. The union argued the railroad violated "its obligation to hold a fair and impartial" investigation. [45-1] at 43; [45-2] at 42. While the union did not cite the CBA, this language matches Rule 22(a) in the CBA. [20] at 80, 137. Furthermore, Skiba does not argue that the drug, alcohol, professionalism, and workplace safety policies PLB 6990 assessed are inconsistent with the CBA. Skiba's disagreement with the board's assessment of company rules, federal regulations, findings of fact, and the evidence amounts to a complaint about the correctness of PLB 6990's interpretation and is therefore outside the scope of judicial review. *Hill*, 814 F.2d at 1197. PLB 6990 did not exceed its jurisdiction.

When a matter concerns statutory rights, such as those arising under Title VII, the Fair Labor Standards Act, and the Federal Employers Liability Act, federal court, and not a PLB, is the proper forum for dispute resolution. *See Kulavic*, 1 F.3d at 517. But PLB 6990 did not attempt to resolve Skiba's potential statutory claims about the legality of his drug test, and properly confined itself to employee disciplinary issues arising out of the CBA's essence. *Lyons*, 163 F.3d at 469. That Skiba's appeal under

FRA regulations may have been consolidated with his disciplinary hearing under the CBA, [40] at 6–7, did not expand the scope of PLB 6990's review to federal regulations.

Finally, courts will set aside arbitration awards that are in "manifest disregard of the law," which is an extremely narrow scope of review and is limited to cases where arbitrators "direct the parties to violate the law." *Wise v. Wachovia Securities, LLC*, 450 F.3d 265, 268–69 (7th Cir. 2006) (internal citations omitted).

The decision to affirm Skiba's suspensions did not exceed the PLB's jurisdiction, so Skiba's complaint does not state a claim for review under that theory.[12]

### 3. *Fraud or Corruption*

Skiba accuses all three panel members—Black, Gold, and Dillon—of misconduct. [20] at 66–78. Because the RLA mandates partisan panel members, 45 U.S.C. § 153 Second, partisanship is not proof of fraud or corruption. *United Transp. Union v. Gateway Western Ry. Co.*, 284 F.3d 710, 712 (7th Cir. 2002). Skiba withdrew this claim against Black. [34] at 46. Furthermore, Black's involvement in the on-property grievance process, participation on PLB 6990, and denial of Skiba's conference request amount to permissible partisanship—not double jeopardy, fraud or corruption.[13] In fact, because of this structure, "[i]t is the neutral who is the real

---

[12] Furthermore, the record establishes that Skiba was legally required to submit to a DOT/FRA pre-employment drug test. [20] at 21, 101–02. That Illinois Central was penalized for administering it too late, *id.*, does not change the fact that he was subject to a drug test under federal law.

[13] *International Association of Machinists and Aerospace Workers v. Metro–North Commuter Railroad* holds that a person cannot participate as both an interested party and a decision-

'judge' and usually decides the case." *United Transp. Union*, 284 F.3d at 711. Black never suppressed the on-property record or Skiba's notices of self-representation from the two other panel members, [45-1] at 1; [45-2] at 1, and Skiba never had a right to present testing technicians as new witnesses, [20] at 32, before the board—as discussed above he had no right to appear or represent himself at all.

Fraud or corruption typically occurs when the panel member is bribed or fails to disclose a relationship, which affects the award. *United Transp. Union*, 284 F.3d at 712. Here, there is no plausible allegation supporting an inference of fraud or corruption. Black misrepresented who from the union represented Skiba at the PLB 6990 hearing. [34] at 13–18.[14] Dillon said Shanahan was at the proceeding when he was not. *Id.*; [20] at 172. Skiba claims this evidence casts serious doubt that anyone argued on his behalf. [34] at 15. However, the record establishes that the union represented Skiba on the panel. [20] at 81–85. Whether a lie or a failure to recollect, this evidence about attendance fails to taint the board's decision-making process in a manner suggestive of fraud or corruption. Finally, Skiba accuses Gold of indifference. [20] at 77. However, Gold's unwillingness to overturn Skiba's suspensions just shows

maker on a NRAB panel. 24 F.3d 369, 371–72 (2d Cir.1994). "Regardless whether that holding is correct, it does not apply to public law boards, since the RLA plainly contemplates that the public law boards will consist of two interested party decision-makers and one neutral." *International Broth. of Elec. Workers v. CSX Transp., Inc.*, 446 F.3d 714, 720, n.3 (7th Cir. 2006).

[14] Skiba cites to Black's deposition testimony from a different case to establish this misrepresentation. Viewing facts in the light most favorable to Skiba, this new evidence is permissible because it is consistent with his theory of fraud or corruption. New evidence in response briefs is impermissible when it amends the complaint. *See Agnew v. National Collegiate Athletic Ass'n*, 683 F.3d 328, 348 (7th Cir. 2012).

that she was not persuaded by the union's position and does not amount to evidence of prohibited conduct. Skiba fails to state a claim for overturning the award because he has not plausibly alleged fraud or corruption.

### 4. *Due Process*

Due process requires an arbitrator to provide adequate notice, a hearing on the evidence, and an impartial decision. *Brotherhood of Locomotive Engineers and Trainmen v. Union Pacific Railroad Company*, 905 F.3d 537, 543 (7th Cir. 2018). As discussed above, Skiba was not entitled to actual notice,[15] and PLB 6990 reviewed the entire on-property record and issued its decision through a properly constituted panel that included a neutral member. The record also establishes that PLB 6990 convened a hearing and did not meet in secret. [20] at 81, 84, 172.[16]

The RLA does not grant due process rights in the on-property proceedings that take place before the PLB proceeding. *Elmore v. Chicago & Illinois Midland Ry. Co.*, 782 F.2d 94, 96 (7th Cir. 1986). The railroad's compliance with the CBA, Townsend's decision-making, [45-1] at 41; [45-2] at 40, Black's denial of a formal investigation waiver, [20] at 13, and witnesses at the on-property investigation, [20] at 32, and the timeliness of TCU's communications, fall outside the scope of judicial review. Perhaps

---

[15] Skiba suggests he was denied due process because the lack of notice prevented him from electing to proceed before the NRAB. [20] at 20. But Skiba was required to act through his representative, thus, it was the union's right to proceed before the NRAB if it was dissatisfied with the PLB agreement. 45 U.S.C. § 153 Second; *see Chicago, R. I. & P. R. Co. v. National Mediation Bd.*, 435 F.2d 339 (7th Cir. 1970).

[16] Skiba makes much of his belief that the board did not meet in person, thereby violating his rights. But the RLA does not require PLBs to meet in-person. *See* 45 U.S.C. § 153 Second. The record shows that the board reviewed the hearing and voted on the awards. It complied with the law.

the union could have done a better job addressing Skiba's requests for self-representation, but Dillon eventually explained to Skiba his lack of individual rights. [20] at 171–72. Moreover, Skiba attended the on-property hearings and had an opportunity to cross-examine witnesses and testify. [45-1] at 3; [45-2] at 3. Skiba received plenty of process both on-property and later. PLB 6990 did not violate Skiba's due process rights.

## IV.   Conclusion

Defendants' motion to dismiss, [27], is granted. Enter judgment in favor of defendants and terminate civil case.

ENTER:

Manish S. Shah
United States District Judge

Date: March 23, 2020